UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIPE AVILA, <br>     Plaintiff, <br>     v. <br> CAROLYN W. COLVIN, <br> Commissioner of Social Security, <br>     Defendant. | NO. CV 12-10707 AGR <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Felipe Avila filed this action on December 20, 2012. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 7, 9.) On September 9, 2013, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. (Dkt. Nos. 19, 21.) The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands this matter for proceedings consistent with this opinion.

# I.

# PROCEDURAL BACKGROUND

On November 19, 2008, Avila filed an application for disability insurance benefits alleging an onset date of October 1, 2008. Administrative Record ("AR") 23, 140. The application was denied initially and on reconsideration. AR 23, 58, 62. Avila requested a hearing before an Administrative Law Judge ("ALJ"). AR 72. On May 21, 2010, the ALJ conducted a hearing at which Avila, a medical expert ("ME"), and a vocational expert ("VE") testified. AR 36-57. On June 1, 2010, the ALJ issued a decision denying benefits. AR 17-31. On February 10, 2012, the Appeals Council denied the request for review. AR 8-12. This action followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found that Avila met the insured status requirements through December 31, 2012. AR 25. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Avila has the severe impairment of degenerative disc disease of the lumbar spine. AR 25. Avila has the residual functional capacity ("RFC") to perform light work. He can lift or carry 20 pounds occasionally and 10 pounds frequently; stand, walk or sit for six hours of an eight-hour work day, with an option to sit or stand for five minutes out of every hour (which does not have to be done consecutively) as long as he does not leave the work station; and occasionally kneel, crouch, stoop, balance, crawl, and bend. He cannot climb ladders, ropes or scaffolds; may use an assistive device to walk for long distances; and should avoid concentrated exposure to cold, heat, wetness, humidity, vibration and exposure to heights or hazards. AR 26. He is unable to perform any past relevant work, but there are jobs that exist in

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

significant numbers in the national economy that he can perform such as parking lot attendant, cashier II and assembler.  AR 29-31.

### C. Credibility

Avila contends the ALJ failed to evaluate properly his credibility.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  The ALJ found that Avila's medically determinable impairments could reasonably be expected to produce the alleged symptoms.  AR 27.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

In weighing credibility, the ALJ may consider factors including:  the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling ("SSR") 88-

4

13)² (quotation marks omitted). The ALJ may consider: (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

As the ALJ noted, Avila testified that he suffers from back and leg pain from work injuries incurred in April 2004 and May 2006. AR 27, 45-46; *see also* AR 247. He worked until 2008, but quit due to back and leg pain. AR 27, 45-46, 159. He suffers from left arm numbness and medication side effects of dizziness, stomach pain, nausea and blurred vision. AR 27, 46-48. After he takes medication, he rests for an hour or hour and a half twice a day. AR 27, 48. He sometimes has to take 6-10 breaks to get through the day. AR 178.

The ALJ found that Avila's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC. AR 27. The ALJ relied on four reasons: (1) the objective evidence did not support the severity of the alleged symptoms; (2) Avila's lack of treatment was inconsistent with his allegations of "very bad" pain two or more times per week; (3) Avila's ability to drive a car for at least one-half hour was inconsistent with his allegations of pain; and (4) Avila's treatment was conservative. AR 27-28.

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the objective medical evidence did not support the severity of Avila's subjective

---

² Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

symptoms. Although Avila demonstrated "significant difficulty performing heel and toe walking on the left," physical examinations revealed full motor power and strength in the upper and lower extremities.[3] AR 27, 273-75. Thoracolumbar range of motion was mildly diminished. AR 274, 277. Upper and lower extremity sensation was intact to light touch. AR 27, 275. A straight leg test was positive on the left, but normal on the right. AR 27, 274. No medical source found anything wrong with his left arm. AR 27, 240-50, 257-70, 272-76, 310-12, 321, 323. Grip strength was 75 pounds on the left. AR 26, 275. The ALJ also noted that the record does not support Avila's need to rest for up to three hours per day or his alleged side effects. AR 27-28, 238, 248-49, 276, 294. X-rays of the lumbar spine in 2004 and 2006 were essentially unremarkable. An MRI of the lumbar spine in 2006 showed evidence of disc involvement with some radicular involvement, although improved. AR 244, 246-47, 270.

The ALJ noted the lapse in treatment between 2007 and 2009. AR 27, 29. Failure to seek treatment or failure to follow prescribed treatment may be considered in assessing credibility. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (claimant's statements may be less credible if level or frequency or treatment is inconsistent with degree of complaints); *see also Burch*, 400 F.3d at 681 (lack of consistent treatment may be considered). In the Disability Report – Appeal, Avila stated he had not seen a doctor because he does not have insurance. AR 192; *see also* AR 46 (same testimony). Failure to seek medical treatment cannot support an adverse credibility finding when it is due to lack of

---

[3] Dr. Gonzales, a consultative orthopedic examiner, found 5/5 motor strength in the bilateral upper extremities for C5 to T1, right lower extremity for L2 to S1, and left lower extremity for L2 and L3. He found 4/5 motor strength in the left lower extremity for L4 to S1. AR 275. Avila argues that despite the ALJ's statement that he had full motor power and strength in the lower extremities, the 4/5 motor strength "demonstrates neurological involvement." JS 4. The Commissioner argues that Dr. Gonzales' finding of 4/5 motor strength does not significantly contradict the ALJ's analysis. Even assuming error, it was harmless in light of the remaining objective evidence upon which the ALJ relied.

funds or medical coverage. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). However, Avila was treated at Olive View in 2009 and 2010 for diabetes, increased cholesterol, chest pain and gastrointestinal problems, and was given an eye examination referral.[4] AR 322-30, 337-38. The Commissioner argues that "there is no evidence here that [Avila] was denied additional visits or care at the county facility, that doctors refused to treat [his] back pain, or that he could not seek treatment there between 2007 and 2009." JS 13-14.

An ALJ may consider a claimant's daily activities when weighing credibility. *Bunnell*, 947 F.2d at 346. The ALJ noted Avila's ability to drive a car for at least one-half hour as inconsistent with his allegations of "very bad" pain two or more times per week. AR 27, 176-77. In the Exertion Questionnaire, Avila stated that he helps with cooking, cleaning, and watering the plants, but sometimes he cannot finish due to pain or weakness. AR 176, 178. In the Disability Report – Appeal, Avila stated he could take care of personal needs but could no longer do yard work. AR 191, 201; *see Molina*, 674 F.3d at 1113 ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). When evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted). The ALJ found that Avila's treatment was "conservative in nature and there is no record of surgical intervention." AR 28. According to the record, Avila's physical therapy and epidural steroid injections

---

[4] Avila's representative at the hearing level argued that Avila went to Olive View on May 5, 2010, complaining of right leg pain and went to Olive View on May 10, 2010, after he fell at home and injured his back. The Olive View records do not corroborate the representative's arguments.

7

1  stopped in 2007, and he has had no surgical intervention for his back or leg pain.
2  AR 247, 272-73.
3     Accordingly, remand is not warranted even assuming without deciding the
4  ALJ erroneously relied upon Avila's failure to seek further treatment. In
5  *Carmickle v. Commissioner of Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2007),
6  the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse
7  credibility finding were invalid. When an ALJ provides specific reasons for
8  discounting the claimant's credibility, the question is whether the ALJ's decision
9  remains legally valid, despite such error, based on the ALJ's "remaining
10 reasoning and ultimate credibility determination." *Id*. at 1162 (italics in original).
11 In light of the ALJ's valid reasons for discounting Avila's credibility, substantial
12 evidence supported the ALJ's credibility finding. *See Bray v. Comm'r of Soc.*
13 *Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (any error was harmless even if
14 record did not support one of four reasons for discounting claimant's testimony).
15 "If the ALJ's credibility finding is supported by substantial evidence in the record,
16 we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing
17 *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

   **D. RFC Determination**

19 Avila contends the ALJ's RFC assessment did not adequately account for
20 his pain and side effects from medication.
21    The RFC determination measures the claimant's capacity to engage in
22 basic work activities. *Bowen v. New York*, 476 U.S. 467, 471, 106 S. Ct. 2022,
23 90 L. Ed. 2d 462 (1986). The RFC is a determination of "the most [an individual]
24 can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). It is an
25 administrative finding, not a medical opinion. 20 C.F.R. § 404.1527(e)(2). The
26 RFC takes into account both exertional limitations and non-exertional limitations.
27 The RFC must contain "a narrative discussion describing how the evidence
28 supports each conclusion, citing specific medical facts (e.g., laboratory findings)

8

and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p. The ALJ must also explain how he or she resolved material inconsistencies or ambiguities in the record. *Id.* "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas*, 278 F.3d 947, 956-57 (citation omitted).

The ALJ's RFC was that Avila can do light work, with restrictions. AR 26. Avila can stand or walk for six hours, may use an assistive device to walk for long distances, and can perform occasional postural functions, among other restrictions. *Id.*

Regarding the effects of pain, Avila argues that pain affects his ability to walk. As discussed above, the ALJ properly considered evidence of Avila's pain. AR 26-29. The RFC included restrictions for standing and walking, and included the option of an assistive device for walking long distances. AR 26. Avila argues that Dr. Grogan, a board certified orthopedist who examined him on June 8 and November 19, 2009, opined that he could walk for two hours and stand for three hours, and could not crawl, climb, or use leg controls. AR 313, 315. However, the ALJ properly rejected Dr. Grogan's opinions, and Avila does not argue otherwise. In addition, although Dr. Grogan indicated in June 2009 that Avila would need an assistive device with the left hand to walk, he did not indicate in November 2009 that Avila would need an assistive device to walk. AR 28, 311, 321. He indicated Avila was "physically incapable of returning to work as a service technician due to his chronic back pain and leg pain, and should be precluded from that type of employment in the future." AR 321. The ALJ similarly concluded that Avila could not perform his past relevant work. AR 29-30.

Regarding side effects from medication, Avila argues the ALJ did not consider dizziness, stomach problems, nausea, vision issues and need to rest for an hour to an hour and a half twice a day. The ALJ specifically discussed Avila's alleged side effects. AR 27; *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th

9

1 Cir. 2005) (ALJ did not err in failing to address all side effects of medication
2 because ALJ "took into account those limitations for which there was record
3 support that did not depend on [the claimant's] subjective complaints"). Although
4 Avila argues that he produced objective evidence of his side effects, he fails to
5 identify that objective evidence and cites only his own subjective testimony. The
6 records reflect no complaints to his doctors of dizziness, sleepiness, blurry vision
7 or nausea caused by his medication. The records show Avila denied nausea,
8 vomiting and insomnia at appointments in 2007. AR 261-62.

9 The ALJ did not err in the RFC determination.

### E. Step Five

Avila contends the ALJ erred at Step Five for two reasons: (1) the ALJ posed an incomplete hypothetical to the VE; and (2) the ALJ did not inquire as to erosion of job numbers due to the sit/stand option.

At Step Five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do. *Lounsburry*, 468 F.3d at 1114. If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits. If the Commissioner cannot meet this burden, the claimant is disabled and entitled to disability benefits. *Id*. "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id*.

Avila contends the ALJ asked an incomplete hypothetical to the VE that did not include use of a hand-held assistive device for walking long distances as reflected in the RFC. The RFC states that Avila "may use an assistive device to walk for long distances." AR 26. An ALJ may rely on VE testimony given in response to a hypothetical question that contains all of the limitations the ALJ

10

found credible and supported by substantial evidence. *Bayliss*, 427 F.3d at 1217-18. An ALJ is not required to include limitations that are not in his findings. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

The parties agree that the ALJ's hypothetical did not include use of a cane. The ALJ asked the VE to assume a hypothetical individual with the RFC outlined by Dr. Hutson, the ME. AR 55. Dr. Hutson's RFC assessment was that Avila could do light work; lift 20 pounds occasionally and 10 pounds frequently; stand, walk or sit for six hours; have a sit/stand option to be allowed to stand up to five minutes out of every hour (which does not have to be done consecutively) without leaving the workstation; occasional postural, except no ladders, ropes or scaffolds; no concentrated exposure to cold, heat, wetness, humidity or vibration; and no heights or hazards.[5] AR 52.

The Commissioner argues that because the cane was not a required limitation in that it "may" be used for long distances, the ALJ did not err in omitting it in the hypothetical to the VE. The court disagrees. The cane option was included in the RFC. AR 26, 29. Therefore, the ALJ was required to incorporate the cane option into his question to the VE. *See Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) ("Hypothetical questions asked of the vocational expert must set out all of the claimant's impairments.") (citation and internal quotation marks omitted).

The Commissioner argues that the jobs the VE identified do not require

---

[5] At the hearing, Avila's attorney asked Dr. Hutson if he was aware that Avila "uses a cane to ambulate." AR 53. Dr. Hutson stated that he did not see evidence in the record to show that the cane was prescribed by a doctor. AR 54. Avila testified that the cane was not prescribed. *Id.*

11

long distance walking.[6] JS 31-32. The court cannot tell from the record whether the jobs the VE identified require long distance walking. According to the Dictionary of Occupational Titles ("DOT"),[7] the job of parking lot attendant is defined as follows:

> Parks automobiles for customers in parking lot or storage garage: Places numbered tag on windshield of automobile to be parked and hands customer similar tag to be used later in locating parked automobile. Records time and drives automobile to parking space, or points out parking space for customer's use. Patrols area to prevent thefts from parked automobiles. Collects parking fee from customer, based on charges for time automobile is parked. Takes numbered tag from customer, locates automobile, and surrenders it to customer, or directs customer to parked automobile. May service automobiles with gasoline, oil, and water. When parking automobiles in storage garage, may be designated Storage-Garage Attendant (automotive ser.). May direct customers to parking spaces.

DOT 915.473-010. The cashier II (DOT 211.462-010) and assembler (DOT 712.687-010) jobs appear to require less walking, but the VE was not asked to consider whether a hypothetical claimant like Avila, who may use a cane for long distance walking, could do those jobs or whether the number of positions

---

[6] The Commissioner argues the RFC stated Avila "[could] not leave the work station." JS 32. However, the RFC states Avila does not leave the work station only when exercising the sit/stand option. AR 26.

[7] The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

12

1  available would be eroded.[8]  The ALJ erred at Step Five.[9]

2  Remand is appropriate to include in the hypothetical all of the limitations set
3  forth in the RFC determination.

## IV.
## ORDER

6  IT IS HEREBY ORDERED that the decision of the Commissioner is
7  reversed and the matter remanded for further proceedings consistent with this
8  opinion.

9  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and
10  the Judgment herein on all parties or their counsel.

13  DATED: February 3, 2014

*alicia G. Rosenberg*
ALICIA G. ROSENBERG
United States Magistrate Judge

---

[8] While some VEs in other cases have apparently testified that the assembler and cashier jobs may be performed with a cane when standing or walking, this court cannot take judicial notice of that finding and apply it to Avila. *See Alsyouf v. Astrue*, 2013 WL 327794, No. 11-1867, at *7 (C.D. Cal. Jan. 29, 2013); *Shelton v. Astrue*, 2012 WL 4465522, No. 11-00820, at *2 (E.D. Cal. Sept. 25, 2012); *Corn v. Astrue*, 2012 WL 2798802, No. 11-00888, at *4 (E.D. Cal. July 9, 2012); *Peterson v. Astrue*, 2010 WL 5313446, No. 10-2160, at *1 (C.D. Cal. Dec. 17, 2010).

[9] Avila's argument regarding the sit/stand option fails. The VE was aware of the sit/stand limitation, which was included in the hypothetical. AR 52. The VE also discussed the sit/stand limitation when ruling out Avila's past relevant work. 55. The VE's testimony reflected any erosion due to the sit/stand option.